UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ESTATE OF ANDRE P. RUDDER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TOM VILSACK, Secretary, ) <br> United States Department of ) <br> Agriculture, ) <br> ) <br> Defendant. ) | Civil Case No. 13-0294 (RJL) <br><br> **FILED** <br><br> JAN 29 2014 <br><br> Clerk, U.S. District & Bankruptcy <br> Courts for the District of Columbia |

MEMORANDUM OPINION
(January 28, 2014) [Dkt. ##7, 10]

Plaintiff, the Estate of Andre P. Rudder ("Estate" or "plaintiff"), brings this action against Tom Vilsack in his official capacity as Secretary of the United States Department of Agriculture ("USDA" or "defendant"). Plaintiff alleges that Mr. Rudder's former employer, the National Resources Conservation Service ("NRCS"), a unit of the USDA, engaged in discrimination and retaliation based on race, color, national origin, and prior Equal Employment Opportunity ("EEO") activity in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 621 *et seq.* *See* Compl. [Dkt. #1]. Currently before the Court is defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment. *See* Def.'s Mot. [Dkt. #7]. Upon consideration of the parties' pleadings, the entire record in this case, and relevant law, the Court GRANTS summary

1

judgment in favor of defendant.[1]

## BACKGROUND

The deceased Mr. Rudder was an American of Trinidadian descent who worked as an Information Technology ("IT") Specialist at an NRCS facility in Beltsville, Maryland until he was reassigned to Fort Collins, Colorado, effective September 28, 2008. *See* Defendant's Statement of Material Facts As To Which There Is No Genuine Dispute ("Def.'s Facts") [Dkt. #7] ¶ 1; Plaintiff's Response to Defendant's Statement of Facts Showing There Are Material Facts In Genuine Dispute ("Pl.'s Facts") [Dkt. #9] ¶ 1; Ex. A to Def.'s Mot. (Final Agency Decision dated 9/4/09) [Dkt. #7-1] at 1. Indeed, in 2008, all NRCS IT security functions were consolidated at the NRCS facility in Fort Collins, Colorado. Def.'s Facts ¶¶ 8–10; Pl.'s Facts ¶¶ 8–10. This was done in order to improve data security, responsiveness, coordination, information sharing, budget efficiency, direct supervision, and infrastructure maintenance. *See* Def.'s Facts ¶ 9; Pl.'s Facts ¶ 9; Ex. B to Def.'s Mot. (Decision Memorandum regarding Optimization of the NRCS IT Security Function) [Dkt. #7-2]; Ex. C to Def.'s Mot. (IRM Recommendations for IT Services dated 11/21/07) [Dkt. #7-3]; Ex. E to Def.'s Mot. (Decision Memorandum for Mark Rey, Under Secretary, Natural Resources and Environment, dated 7/7/08) [Dkt. #7-5]. Before this consolidation took place, the NRCS IT Division in Beltsville, Maryland was reorganized in October 2007. *See* Ex. 1 to Pl.'s Opp. (EEOC Decision on Appeal) [Dkt.

---

[1] Plaintiff's Motion for Discovery [Dkt. #10], filed on July 31, 2013, is also before the Court. Because the Court grants Summary Judgment in favor of the defendant, the plaintiff's Motion for

#9-1] at 1. Mr. Rudder was assigned to the Security Incident team in connection with that reorganization. *Id.*

The consolidation of the IT Security function at Fort Collins entailed reassignment of the complete IT Security staff in Beltsville, comprised of eight individuals including Mr. Rudder. Def.'s Facts ¶¶ 11, 16; Pl.'s Facts ¶¶ 11, 16; Ex. L to Def.'s Mot. (Affidavit of Andre Rudder dated 4/14/09) [Dkt. #7-12]. Two of the eight reassigned employees were Caucasian, two were pacific islanders, and four—including Mr. Rudder—were black. Def.'s Facts ¶ 18; Pl.'s Facts ¶ 18. Prior to the final decision on whether to consolidate, NRCS conducted a Civil Rights Impact Analysis ("CRIA"). Def.'s Facts ¶ 7; Pl.'s Facts ¶ 7; Ex. D to Def.'s Mot (CRIA of Reorganization of the NRCS IT Security Function dated 7/3/08) [Dkt. # 7-4]. The CRIA found that consolidation would "adversely impact minorities, females, persons with a disability and persons over the age of 40." Ex. D to Def.'s Mot. The CRIA also recommended mitigation, including provision of relocation expenses, for reassigned employees. *Id.*

Mr. Rudder received his formal Directed Reassignment Notice on July 24, 2008. Def.'s Facts ¶ 12; Pl.'s Facts ¶ 12; Ex. G to Def.'s Mot. (Directed Reassignment Notice dated 7/24/08) [Dkt. #7-7]. On July 30, 2008, Mr. Rudder filed an informal grievance with his first-line supervisor, opposing the reassignment. Attachment B to Def.'s Reply (Employment Grievance) [Dkt. #13-2]. Mr. Rudder ultimately accepted his reassignment

Discovery is rendered moot.

on July 30, 2008. Def.'s Facts ¶ 19; Ex. H to Def.'s Mot. [Dkt. #7-8]. On July 31, 2008, he withdrew the informal grievance.[2] *See* Ex. A to Def.'s Mot. (Final Agency Decision) [Dkt. 7-1] at 3. Plaintiff claims that Mr. Rudder's acceptance was "not entirely voluntary" because his alternative to acceptance was removal from Federal service. Pl.'s Facts ¶ 19. Plaintiff also alleges that Mr. Rudder did not receive any relocation expenses or assistance. *See* Pl.'s Facts ¶ 23; Ex. 1 to Pl.'s Opp at 3. As a result, plaintiff claims to have suffered financial hardship, including foreclosure on Mr. Rudder's Washington, DC home, as well as significant emotional distress, requiring Mr. Rudder to take 500 hours of sick leave. Pl.'s Facts ¶¶ 23–24. The record, however, contains evidence that defendant did provide Mr. Rudder with a travel authorization/advance. *See* Attachment A to Def.'s Reply [Dkt #13-1].

Upon his reassignment to Fort Collins, Mr. Rudder retained the same grade, title, and basic pay, without promotion or demotion. Def.'s Facts ¶ 20; Ex. K to Def.'s Mot. [Dkt. #7-11]. His position remained that of IT Specialist. *See* Ex. G. to Def.'s Mot. Mr. Rudder's estate claims, however, that his job responsibilities were altered from those of an IT Specialist to those of a data entry clerk. Pl.'s Facts ¶ 20; Compl. ¶ 17. He also claims that he was subjected to intolerable work conditions. Pl.'s Facts ¶ 22; Ex. 1 to Pl.'s Opp. at 3. In January 2009, Mr. Rudder left the USDA to join the Army as an IT Specialist. Ex. L to Def.'s Mot. ¶¶ 1, 2.

---

[2] The Associate Chief responded to Mr. Rudder's informal grievance on August 22, 2008, upholding his reassignment. *See* Ex. 1 to Pl.'s Opp. (EEOC Appeal Decision) [Dkt. #9-1] at 2.

4

Title 29 of the Code of Federal Regulations describes the administrative process for filing discrimination complaints against the federal government. First, the employee "must initiate contact with a[n EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1); *see Steele v. Schafer*, 535 F. 3d 689, 690 (D.C. Cir. 2008). If the matter cannot be resolved through counseling, the EEO Counselor informs the aggrieved person of the right to file a formal complaint. 29 C.F.R. §§ 1614.105(d), 1614.106(b). In order to exhaust administrative remedies, a complainant must file a formal written complaint. *Hamilton v. Geithner*, 666 F. 3d 1344, 1350 (D.C. Cir. 2012). Once a claimant has filed an administrative complaint, he can amend his complaint pursuant to 29 C.F.R. § 1614.106(d), and bring any "like or related" claims directly to the investigator without going through the first phase of administrative review, as required by 29 C.F.R. § 1614.105(a). *See Weber v. Battista*, 494 F.3d 179, 184 (D.C. Cir. 2007). The employee may file a civil action within ninety days after the agency issues an adverse final decision, 29 C.F.R. § 1614.407(a), or after 180 days elapse without a decision, *id.* § 1614.407(b).

Here, Mr. Rudder filed a formal grievance with NRCS on September 4, 2008, after withdrawing his informal grievance on July 31, 2008. *See* Ex. 1 to Pl.'s Opp. at 2. Because Mr. Rudder's formal grievance did not meet the requirements for acceptance, however, it was rejected by the agency in early October 2008. *Id.* The agency did organize a mediation session attended by Mr. Rudder later that month, but the parties

were unable to reach a resolution. *Id.* Mr. Rudder filed an EEO complaint on November 25, 2008, alleging discrimination on the basis of race, national origin, color, and prior EEO activity. Ex. I to Def.'s Mot. ("Complaint of Employment Discrimination") [Dkt. #7-9]. His complaint was accepted by the USDA and referred for investigation on January 29, 2009. Ex. J to Def.'s Mot. (Correspondence from Kenneth J. Baisden to Lawrence Lucas) [Dkt. #7-10]. The USDA defined the claim accepted and referred for investigation as follows:

> Whether the agency subjected the complainant to discrimination based on race (Black), national origin (Trinidadian), and reprisal (prior EEO activity) when on July 24, 2008, complainant was advised by management of a directed reassignment from Beltsville, Maryland to Fort Collins, Colorado effective September 28, 2008.

*Id.* The USDA also advised plaintiff in writing of his right to disagree with this claim. *Id.* Plaintiff never exercised this right.

On April 14, 2009, Mr. Rudder made a statement to the EEO investigator assigned by the USDA to investigate his complaint. *See* Ex. L to Def.'s Mot. Mr. Rudder stated that he believed his reassignment was based on his race and color because "[t]he Agency has engaged in discrimination against employees' [sic] and customers base [sic] on their races, i.e. Black Farmers, Asian Class action." *Id.* at ¶¶ 9, 10. Mr. Rudder additionally stated that "my directed reassignment was based on my national origin because I still have pending EEO cases in which Ms. Dana York is directly involved and one of them pertains to National origin." *Id.* at ¶ 11. Mr. Rudder also alleged that his October 2007 assignment to the Security Incident team in Beltsville was racially motivated and that

6

white employees were treated differently. *Id.* at ¶ 5. Mr. Rudder passed away as a result of hypertensive and atherosclerotic heart disease shortly after giving this statement, on May 16, 2009. Pl.'s Opp. at 1; *see also* Complaint at ¶ 22, Moses v. District of Columbia, No. 10-cv-802 (D.D.C. May 14, 2010) ECF No. 1.

On September 4, 2009, the USDA issued a Final Agency Decision ("FAD") determining that Mr. Rudder had not made a prima facie case of discrimination or retaliation. Ex. A. to Def.'s Mot. On October 9, 2009, Mr. Rudder's estate appealed that decision. *See* Ex. 1 to Pl.'s Opp. On December 6, 2012, the Equal Employment Opportunity Commission ("EEOC") denied that appeal. *Id.* Plaintiff subsequently filed the instant civil action on March 7, 2013.

## STANDARD OF REVIEW

Defendant moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that plaintiff failed to exhaust his administrative remedies with respect to several of the claims raised in his complaint. Defendant's assertion regarding non-exhaustion of administrative remedies is an affirmative defense that does not raise jurisdictional implications. *See Artis v. Bernanke*, 630 F.3d 1031, 1034, n.4 (D.C. Cir. 2011); *Blue v. Jackson*, 860 F. Supp. 2d 67, 72 (D.D.C. 2012). As affirmative defense, the defendant bears the burden of producing evidence demonstrating non-exhaustion. *Bowden v. United States,* 106 F. 3d 433, 437 (D.C. Cir. 1997) (citation omitted). If the defendant carries this burden, the plaintiff must rebut the defendant's evidence or invoke

one of the equitable doctrines of waiver, estoppel, or tolling. *Id.* If a district court refers to materials outside the pleadings in resolving a 12(b)(6) motion alleging non-exhaustion, it must convert the motion to dismiss into one for summary judgment and provide the parties an opportunity to present evidence in support of their positions. *See Kim v. United States,* 632 F.3d 713, 719 (D.C. Cir. 2011); FED. R. CIV. P. 12(d).

"[A] district court can consider a summary judgment motion when it is satisfied that the parties are not taken by surprise or deprived of a reasonable opportunity to contest facts averred outside the pleadings and the issues involved are discrete and dispositive." *Hamilton v. Geithner*, 743 F. Supp. 2d 1, 8 (D.D.C. 2010) (quotations and citation omitted). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Although the burden is on the movant to show that there is no dispute of fact, the non-moving party also bears the "burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.*

The court must accept as true the evidence of, and draw "all justifiable inferences" in favor of, the party opposing summary judgment. *Id.* at 255. To the extent that the non-moving party will bear the burden of proving facts at trial, however, those facts must

be supported by competent evidence, and the absence of such evidence can form the basis for summary judgment. *See Celotex*, 477 U.S. at 322–24. A genuine issue exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## ANALYSIS

As a threshold matter, the Court concludes that both parties have had sufficient opportunity to present material evidence beyond the pleadings and contest the discrete, dispositive facts and issues involved in this case. Both parties have submitted briefs extensively discussing the material facts and issues surrounding plaintiff's claims of discrimination, retaliation, and administrative exhaustion. Plaintiff's Opposition to Defendant's Motion cites the record below and presents additional evidence not found in the Agency Report of Investigation. *See* Pl.'s Opp. & Exhibits [Dkt. #9]. Because plaintiff would not suffer prejudice from the conversion of defendant's Motion into one for summary judgment, the Court will so proceed.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin." 42 U.S.C. §§ 2000(e)–2(a)(1). Title VII similarly prohibits employers from retaliating against an employee because that employee "has opposed any practice made an unlawful practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any

9

manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. §§ 2000(e)–3(a). Before an employee may obtain relief under Title VII in federal court, he must exhaust the administrative process for each *discrete* act of discrimination or retaliation he alleges. *Blue v. Jackson*, 860 F. Supp. 2d 67, 73 (D.D.C. 2012). The purpose of the administrative exhaustion requirement is to preserve judicial resources and provide the agency with notice and an opportunity to pursue an administrative resolution. *See Brown v. Marsh*, 777 F. 2d 8, 14 (D.C. Cir. 1985); *Pearsall v. Holder*, 610 F. Supp. 2d 87, 95 (D.D.C. 2009).

The "EEOC has established detailed procedures for the administrative resolution of discrimination complaints, including a series of time limits for seeking informal adjustment of complaints, filing formal charges, and appealing agency decisions to the Commission." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (citation omitted). Plaintiff must exhaust those administrative remedies before bringing a suit in district court. *Id.* Here, the claim accepted and referred for investigation at the administrative level was:

> Whether the agency subjected the complainant to discrimination based on race (Black), national origin (Trinidadian), and reprisal (prior EEO activity) when on July 24, 2008, complainant was advised by management of a directed reassignment from Beltsville, Maryland to Fort Collins, Colorado effective September 28, 2008.

Ex J. to Def.'s Mot. Mr. Rudder's estate brings the same claim in the instant Complaint, in addition to several new claims involving conduct he never raised at the administrative level. Plaintiff now claims that the following discrete acts constituted discrimination and

10

retaliation: (1) reassignment in October 2007 to another team in Beltsville; (2) subjection to adverse working conditions in Fort Collins; (3) change in job responsibilities in Fort Collins; and (4) refusal to provide relocation expenses and assistance as recommended by the CRIA. *See* Compl. ¶¶ 23, 27, 31.

Mr. Rudder's estate argues that his new claims are sufficiently related, for purposes of the administrative exhaustion requirement, to piggy-back on the claim accepted and referred for investigation at the administrative level. I disagree. In assessing whether an administrative claim has been timely filed, the Supreme Court has noted that "each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). This Court has further elaborated that

> The key to determining whether a claim must meet the procedural hurdles of the exhaustion requirement itself, or whether it can piggy-back on another claim that has satisfied those requirements, is whether the claim is of a "discrete" act of discrimination or retaliation or, instead, of a hostile work environment. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" are individual acts that "occur" at a fixed time.

*Coleman–Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 137–38 (D.D.C. 2004) (quoting *Morgan*, 536 U.S. at 114). Here, Plaintiff's new claims allege discrete incidents that were different in kind, involved different individuals, and occurred at different times. Accordingly, exhaustion of these claims was required "regardless of any relationship that may exist between [them]." *Id.* at 138.

11

The four above-listed acts were not included in Mr. Rudder's Complaint of Employment Discrimination dated November 25, 2008, *see* Ex. I to Def.'s Mot (Complaint of Employment Discrimination) [Dkt. #7-9], nor were they included in the claim accepted and referred for investigation in January 2009, *see* Ex. J to Def.'s Mot. If plaintiff believed that these discrete acts were improperly omitted from the claim accepted and referred for investigation, "he certainly had the opportunity (and informed responsibility) to apprise the agency of its error." *Hamilton*, 743 F. Supp. 2d at 12. Here, Mr. Rudder never expressed a desire to amend his complaint to include issues or claims like or related to those raised in the complaint. Because Mr. Rudder did not properly raise the four above-listed incidents at the administrative level, the USDA was stripped of an opportunity to reach an administrative resolution. Accordingly, the Court must dismiss plaintiff's belated claims.

Defendant acknowledges that plaintiff did, however, properly exhaust his Title VII claims of discrimination (based on race, color and national origin) and retaliation (based on prior EEO activity) with respect to his directed reassignment in 2008. Considering all relevant evidence presented by the parties and drawing all justifiable inferences in plaintiff's favor, however, defendant is entitled, nonetheless, to summary judgment on these claims.

Our Circuit has stated that, at the summary judgment stage, it is "almost always irrelevant" whether a plaintiff in a discrimination suit has made out a *prima facie* case.

*Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 493 (D.C. Cir. 2008). Where, as here, the employer asserts a "legitimate, non-discriminatory reason" for the actions challenged, the appropriate inquiry is whether the employee has put forth sufficient evidence for a reasonable jury to conclude that the employer's proffered explanation is a mere pretext and the employer intentionally discriminated against the employee. *Id.* at 494. The same approach applies to retaliation claims. *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009). Summary judgment must be granted for the defendant if the plaintiff fails to "produce sufficient evidence that would discredit [the employer's proffered explanation] and show that the actions were retaliatory." *Baloch v. Kempthorne*, 550 F.3d 1191, 1200 (D.C. Cir. 2008).

Here, plaintiff's discrimination and retaliation claims fail because no reasonable factfinder could infer from the record that plaintiff's race, color, national origin, or prior EEO activity was the reason for plaintiff's reassignment. Defendant has produced ample evidence that plaintiff was reassigned to Fort Collins for a legitimate organizational reason in compliance with Title 5, Code of Federal Regulations, Section 210.102(b)(12). The record clearly demonstrates that the USDA made a business decision to consolidate the NRCS IT Security function in Fort Collins for compelling reasons, including improved data security, responsiveness, coordination, information sharing, budget efficiency, direct supervision, and infrastructure maintenance. *See* Def.'s Facts ¶ 9; Pl.'s Facts ¶ 9; Ex. B to Def.'s Mot.; Ex. C to Def.'s Mot.; Ex. E to Def.'s Mot.

Our Circuit has instructed lower courts to decline to "serve as a super-personnel department that reexamines an entity's business decisions." *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006) (quotations and citation omitted). The reassignment at issue here strikes me as a direct consequence of an entirely legitimate business decision, and plaintiff offers no evidence from which a reasonable jury could conclude otherwise. Employees often try to cast doubt on an employer's asserted reason by "produc[ing] evidence suggesting that the employer treated other employees of a different race, color, religion, sex, or national origin more favorably in the same factual circumstances." *Brady*, 520 F.3d at 495. Here, plaintiff has failed to produce any concrete comparative evidence from which a reasonable trier of fact could infer pretext. Indeed, it is undisputed that the consolidation affected all similarly situated IT staff, both inside and outside of Mr. Rudder's protected categories of race, color, and national origin.

Plaintiff's only argument for discrediting the USDA's asserted, non-discriminatory reason is his contention that "[t]he Agency has discriminated against employees' [sic] and customers base [sic] on their races, i.e. Black Farmers, Asian Class action." Ex. L to Def.'s Mot. at ¶¶ 9, 10. Mr. Rudder additionally stated that "my directed reassignment was based on my national origin because I still have pending EEO cases in which Dana York is directly involved and one of them pertains to National origin." *Id.* at ¶ 11. Such general and conclusory statements of personal opinion and speculation are, of course, insufficient to support any reasonable inference of suspect motivation on the part of the

USDA. *See Pardo-Kronemann v. Donovan*, 601 F.3d 599, 611 (D.C. Cir. 2010); *Brown v. Brody*, 199 F.3d 446, 458–59 (D.C. Cir. 1999). Accordingly, defendant is entitled to summary judgment as to plaintiff's claims of discrimination and retaliation in connection with his directed reassignment in 2008.

## CONCLUSION

For all the foregoing reasons, the defendant's Motion for Summary Judgment is GRANTED and plaintiff's Motion for Discovery is DENIED as moot. An Order consistent with this decision shall accompany this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge